UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD BELGARDE,<br>Plaintiff,<br>v.<br>MICHAEL YOUNG,<br>Defendant. | Case No. 25-cv-10863-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket Nos. 27-28 |

This is the second of the two "CFO Rick" cases. Plaintiff here is Rick Belgarde, and Defendant Michael Young. Mr. Belgarde and Mr. Young are members/owners of an LLC known as Millwright Holdings LLC. Mr. Belgarde is the minority member, and Mr. Young the majority member. Mr. Belgarde is not only a member of Millwright; he also once served as the company's CFO. In addition, Mr. Belgarde owns or is affiliated with another company, CFO Rick, that for some time provided accounting services to Millwright.

In March 2025, Mr. Belgarde's role as CFO for Millwright was terminated. In addition, CFO Rick's services for Millwright were terminated. Thus, at present, Mr. Belgarde is simply the minority member of Millwright.

In November 2025, Mr. Young initiated an arbitration against both Mr. Belgarde and CFO Rick. Mr. Young relied on an arbitration provision in Millwright's Operating Agreement. After this Court held in the related case (*CFO Rick Inc. v. Young*, No. C-25-9896 EMC (N.D. Cal.)) that CFO Rick could not be compelled to arbitration (it was not a signatory to the Operating Agreement), Mr. Young amended his arbitration demand and asserted claims against Mr. Belgarde only. The arbitration claims were asserted by Mr. Young as an individual and derivatively on

behalf of Millwright.

Although Mr. Belgarde is a signatory to the Millwright Operating Agreement that contains an arbitration clause, Mr. Belgarde maintains that he should not be required to participate in the arbitration that Mr. Young initiated. Mr. Belgarde asserts three claims in this lawsuit against Mr. Young: two claims for declaratory relief and one claim for breach of contract (based on a failure to pay back multiple loans). Now pending before the Court is Mr. Young's motion to compel arbitration and stay or, in the alternative, to dismiss. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the motion to compel arbitration.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the operative first amended complaint ("FAC"), Mr. Belgarde alleges as follows.

Millwright is an LLC in which Mr. Belgarde and Mr. Young are the two members/owners. *See* FAC ¶ 7. Millwright is governed by an Operating Agreement which was signed by both Mr. Belgarde and Mr. Young in or about August 2020. *See* FAC, Ex. A (Operating Agreement).

As reflected in the Operating Agreement, Mr. Belgarde has the minority interest in Millwright, and Mr. Young the majority interest. *See* FAC, Ex. A (Operating Agreement, Schedule A) (reflecting that Mr. Belgarde has an 18.92% interest and Mr. Young an 81.08% interest). Mr. Young is also the manager of Millwright. *See* FAC, Ex. A (Operating Agreement § 7.1(a)). As for Mr. Belgarde, because of his investment in Millwright, he is a Board member of the company. *See* FAC ¶ 8. He was also appointed to serve as Millwright's CFO. *See* FAC ¶ 9. Finally, Mr. Belgarde is affiliated with a company, CFO Rick, that provided accounting services to Millwright. *See* FAC ¶ 10.

In March 2025, Mr. Belgarde was terminated from his position as Millwright's CFO. CFO Rick's accounting services for Millwright were also terminated at that time. *See* FAC ¶ 12. However, Mr. Belgarde remains a member of Millwright. *See* FAC ¶ 14.

In November 2025, Mr. Young initiated an arbitration against both Mr. Belgarde and CFO Rick. Mr. Young relied on the arbitration clause contained in the Millwright Operating Agreement (§ 12.14 of the agreement). *See* FAC ¶ 19. In the arbitration demand, Mr. Young asserted claims on his own behalf and (derivatively) on behalf of Millwright. *See* FAC ¶ 17.

United States District Court
Northern District of California

In response, CFO Rick filed a lawsuit (*CFO Rick*, No. C-25-9896 EMC) seeking a declaration that it could not be compelled to arbitration under the Operating Agreement (*i.e.*, because it was not a signatory to the contract). *See* FAC ¶ 23. After this Court ruled in CFO Rick's favor, Mr. Young amended his arbitration demand. He dropped CFO Rick from the arbitration but continued to assert claims against Mr. Belgarde. *See* FAC ¶¶ 24-25. The claims asserted in the amended arbitration demand are as follows:

- Breach of fiduciary duty.
- Breach of the Operating Agreement.
- Misappropriation of trade secrets.
- Fraud.
- Accounting.

All of the claims are brought individually and derivatively (*i.e.*, on behalf of Millwright), except for the last. The last claim – for an accounting – is brought only derivatively.

A copy of the amended arbitration demand can be found at Exhibit C attached to the Young Declaration. The main factual predicate for the arbitration claims is that Mr. Belgarde, acting as Millwright's CFO, overpaid CFO Rick for its services (*i.e.*, self-dealing). There are also allegations that Mr. Belgarde failed to make his capital contributions to Millwright and intentionally mismanaged Millwright's finances (*e.g.*, miscalculating employee commissions and failing to remit payroll taxes). The arbitration demand also includes a trade secret claim. The trade secret claim is related to allegations that Mr. Belgarde set up a company to compete with a Millwright-affiliated company, took the Millwright-affiliated company's trade secrets and other confidential information for his competing company, and diverted the Millwright-affiliated company's clients and ongoing business to his competing company.

In this pending suit, Mr. Belgarde has asserted three claims for relief, two of which are directly related to the fact that Mr. Young initiated an arbitration against Mr. Belgarde.

/ / /

/ / /

/ / /

A. Count 1

In **Count 1**, Mr. Belgarde seeks a declaration that he cannot be compelled to arbitrate the claims that Mr. Young has brought against him. *See* FAC ¶ 70. According to Mr. Belgarde, he cannot be compelled to arbitration because Mr. Young failed to initiate the arbitration properly: (1) Mr. Young did not engage in a face-to-face negotiations prior to initiating arbitration, as required by the Operating Agreement's dispute resolution provision, *see* FAC ¶ 66; and (2) to the extent Mr. Young has brought derivative claims, Delaware law requires that a demand be made to the Millwright Board first or that a demonstration be made that demand would be futile. *See* FAC ¶¶ 59-63.

B. Count 2

In **Count 2**, Mr. Belgarde seeks another declaration – specifically, a declaration that Mr. Young "may not fund his bad faith pursuit of the Arbitration using Millwright funds." FAC ¶ 93. This request for relief is tied to a provision in the Operating Agreement – specifically, the indemnification provision (§ 8.2). The indemnification provision states:

> The Company will indemnify each officer and Manager (each a "Covered Person") to the fullest extent permitted by the Act, but such indemnity will not extend to any conduct by the party seeking indemnification that is determined by a court of competent jurisdiction to constitute bad faith, fraud, gross negligence, or willful misconduct. Any indemnity under this Section 8.2 will be paid from, and only to the extent of, Company assets and no Member will have any personal liability on account thereof.

FAC, Ex. A (Operating Agmt. § 8.2).

Mr. Belgarde suggests that § 8.3 of the Operating Agreement, which governs expenses, is also implicated. The expenses provision states:

> To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding relating to the Company will, from time to time, be advanced by the Company before the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it is determined that the Covered Person is not entitled to be indemnified as authorized in this Article 8.

FAC, Ex. A (Operating Agmt. § 8.3).



United States District Court
Northern District of California

United States District Court
Northern District of California

According to Mr. Belgarde, Mr. Young "is using Millwright funds to pay the legal fees and expenses he has incurred in connection with the Arbitration, **effectively** indemnifying himself using Millwright funds in connection with the Arbitration," but Millwright should not be indemnifying Mr. Young because he is pursuing arbitration in bad faith. FAC ¶ 76 (emphasis added). Mr. Belgarde provides some examples of alleged bad faith on the part of Mr. Young. *See, e.g.*, FAC ¶ 77 (alleging that Mr. Young used Millwright funds to hire a third party (Citrin), which prepared a forensic report concluding that Mr. Belgarde had engaged in unspecified financial misconduct, but has refused to give Mr. Belgarde a copy of that forensic report); FAC ¶ 79 (alleging that Mr. Young improperly named CFO Rick as a respondent in the arbitration even though it was not a signatory to the Operating Agreement that contained the arbitration clause); FAC ¶¶ 83, 87 (alleging that Mr. Young has refused to comply with Mr. Belgarde's books-and-records request even though he is entitled to such books and records as a minority member; adding that complying would reveal that Mr. Young "is improperly funding his litigation efforts, including the Arbitration, using funds belonging to Millwright"); FAC ¶ 88 (alleging that Mr. Young does not have the capacity to bring claims derivatively, on behalf of Millwright, because of the failure to engage in face-to-face negotiations and because of the lack of a demand on the Millwright board).

Mr. Belgarde seeks a declaration of bad faith on the part of Mr. Young because, "before any significant substantive progress in the Arbitration is made, it would be ideal to know now whether [Mr. Young] will be entitled to any indemnification pursuant to the Operating Agreement." FAC ¶ 95.

Mr. Belgarde relies on the expenses provision only to the extent that Mr. Young "intends to rely on [it] as a basis for using . . . Millwright funds to finance his ongoing litigation efforts with Plaintiff[.] [T]he Expenses Provision should be deemed unavailable to Defendant because this case is only necessitated by Defendant's bad faith conduct in pursuing the Arbitration against Plaintiff." FAC ¶ 96 (adding that Mr. Young has not provided any undertaking to Millwright).

/ / /

/ / /

C. Count 3

Finally, in **Count 3**, Mr. Belgarde brings a claim for breach of contract against Mr. Young. As alleged, starting in or about December 2023, the parties entered into thirteen different oral contracts in which (1) Mr. Belgarde agreed to loan Mr. Young certain sums (ranging from $1,000 to $80,000) and (2) Mr. Young agreed to pay Mr. Belgarde back at a 9% interest rate. The total amount loaned was $209,330. *See* FAC ¶¶ 98-102. Mr. Young has breached the agreements by failing to repay any of the amounts. *See* FAC ¶ 103.

Notably, in Mr. Belgarde's answer filed in the arbitration between the parties, he asserted an affirmative defense predicated on the above-described loans. Specifically, he maintained that any recovery by Mr. Young in the arbitration should be reduced by "the approximately $209,300 in thirteen loans [Mr. Belgarde] made to [Mr. Young] between December 19, 2023[,] and December 30, 2024, none of which [Mr. Young] has repaid." Docket No. 41-1 (Mr. Belgarde's answer, twentieth affirmative defense).

## II. DISCUSSION

In response to the motion to compel arbitration, Mr. Belgarde does not dispute that he is a signatory to the Millwright Operating Agreement and that the agreement contains an arbitration provision. That provision states in relevant part:

> To the extent feasible, the parties desire to resolve any controversies or claims arising out of or relating to this Agreement through discussions and negotiations between each other. All parties agree to attempt to resolve any disputes, controversies or claims arising out of or relating to this Agreement by face-to-face negotiation with the other party. Any dispute arising under the terms of this Agreement that cannot be resolved by the Members shall be resolved by mediation or binding arbitration in accordance with the rules of the American Arbitration Association ("AAA") applying the substantive law of the state of Delaware, without regard to any conflict of law provisions. . . .

FAC, Ex. A (Operating Agmt. § 12.14).

A. Waiver

In spite of the arbitration provision, Mr. Belgarde argues, as an initial matter, that Mr. Young cannot compel arbitration because he has waived the right to arbitrate. Mr. Belgarde has the burden of proving waiver. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th

Cir. 2023) (stating that "the party opposing arbitration . . . bears the burden of showing waiver"). "[T]he burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context. . . . [T]he party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Id.* at 1015 (holding that the party opposing arbitration no longer has to demonstrate prejudice).

In the instant case, there is no dispute that Mr. Young knew of an existing right to compel arbitration. He initiated an arbitration against Mr. Belgarde back in November 2025. Thus, the only question for the Court is whether Mr. Young has engaged in intentional acts inconsistent with the right to compel arbitration.

Mr. Belgarde concedes that he cannot claim waiver simply because Mr. Young "defend[ed] the CFO Rick Federal Case or . . . [pled] the compulsory counterclaims that Rule 13(a) required him to plead there." Opp'n at 13. But Mr. Belgarde argues that there are three other considerations that establish waiver of Mr. Young's right to arbitrate his claims. *See* Opp'n at 13 ("The inconsistent conduct is narrower . . . ."). None is persuasive.

First, Mr. Belgarde claims waiver on the basis that "[Mr.] Young represented to this Court [in this case] that the judicial forum was an appropriate place for the very claims he now says must be arbitrated." Opp'n at 13. The statement that Mr. Belgarde refers to was made at the initial case management conference for this case (on March 17, 2026). There is no transcript for that conference. But the minutes for that conference reflect as follows:

> Court asked what the parties were seeking in moving forward with the CFO Rick case [not this case]. Plaintiff said the substantive counterclaims brought by Defendant against Plaintiff could be pursued in state court.[[1]]
>
> Court inquired whether the federal court is a proper forum and asked what claims are remaining in this litigation.
>
> **Defendant explained that federal court would be an appropriate forum, as there exists a trade secret claim under federal law.** However, Plaintiff plans to move to dismiss the federal counterclaim.

[1] CFO Rick initiated a suit against, *inter alia*, Mr. Young and Millwright in state court.



United States District Court
Northern District of California

> Court explained that if the Court denies the plaintiff's motion to dismiss the federal [counter]claim [in *CFO Rick*], then it would assert supplemental jurisdiction over the remaining state counterclaims. But, if the Court were to grant the motion to dismiss the federal claim, it will likely not assert supplemental jurisdiction, and the case will go back to state court.

Docket No. 20 (minutes) (emphasis added).

When the statement above (in bold) is taken in context, it is clear that Mr. Young was not waiving his right to arbitrate – especially his or Millwright's claims *against Mr. Belgarde*. The parties were discussing with the Court the *CFO Rick* case, and Mr. Young had asserted counterclaims (on his and Millwright's behalf) in *CFO Rick* because he was concerned that they could be deemed compulsory in nature. The parties and the Court were focused on this Court's potential federal jurisdiction (versus the state court's) over the counterclaims.

Second, Mr. Belgarde asserts that Mr. Young waived his right to arbitrate by

> declin[ing] to prosecute [the arbitration]. For roughly six months the Arbitration advanced no further than arbitrator selection while Young litigated the same grievances in two courts. When Young finally amended the statement of claim in the Arbitration, he told the AAA that the amendment was "not intended to immediately restart the Arbitration." (Kelly Decl. Ex. 1.[[2]]) A claimant who files a demand, holds it in abeyance, and expressly disclaims any intention to restart the proceeding he commenced – while actively pursuing overlapping claims elsewhere – has not treated the arbitral forum as the place where his dispute will be resolved.

Opp'n at 13.

Similar to above, Mr. Belgarde leaves out the full context of matters. The arbitration was delayed because the parties were trying to figure out what claims could be arbitrated (including but not limited to any claims against CFO Rick) and whether Mr. Young or Millwright had compulsory counterclaims in *CFO Rick*. *See also* Reply at 6-7 (indicating that *Mr. Belgarde* wanted an abeyance of the arbitration for these reasons). As for the email that Mr. Young sent to the AAA, he stated that he was amending his arbitration so as to drop CFO Rick as a respondent (consistent with the Court's denial of the motion to compel arbitration in *CFO Rick*) but he was

[2] Exhibit 1 to the Kelly Declaration is an email that Mr. Young's counsel sent to the AAA.



United States District Court
Northern District of California

*still* pursuing arbitration against Mr. Belgarde. Mr. Young then stated: "Belgarde and Young are still in discussions resolving this matter so the filing of this Amended [Arbitration] Claim is not intended to immediately restart the Arbitration but is intended to formally remove CFO Rick as a Respondent." Kelly Decl., Ex. 1 (email). Given the full email, this can hardly be said to be an intentional relinquishment of the right to arbitrate. That the parties were trying to settle matters is not a reason to find that Mr. Young forfeited his right to arbitrate. *Cf. Armstrong*, 59 F.4th at 1015 (noting that, "[a]lthough 'a party's extended silence and delay in moving for arbitration may indicate a "conscious decision to seek judicial judgment on the merits of [the] arbitrable claims,"' [the defendant] was consistently vocal about its intent to move to compel arbitration").

Finally, Mr. Belgarde contends that Mr. Young waived the right to arbitrate once the "totality of [his] actions" are considered. Opp'n at 14.

> Young named a non-signatory, CFO Rick, in arbitration; moved to compel that non-signatory; withdrew it after this Court ruled against him; filed overlapping claims in two courts; expressly reserved the same equitable remedies in each; and returned to the AAA only after mediation failed to produce a resolution. Considered together, that is the conduct of a party treating arbitration as a reserve forum rather than as a binding commitment.

Opp'n 14. None of the above suggests that Mr. Young was treating "arbitration as a reserve forum." The fact that Mr. Young was trying to compel CFO Rick to arbitration was independent of whether Mr. Belgarde could be compelled to arbitration – and in any event, it was clear that Mr. Young's desire was to pursue arbitration, not concede to a judicial forum. As for the "overlapping claims," Mr. Belgarde is referring here to the fact that (1) Mr. Young/Millwright's arbitration claims were based on the same or similar factual allegations and legal theories as (2) Mr. Young's/Millwright's counterclaims in *CFO Rick* and (3) Millwright's cross-complaint in the state court lawsuit (which was initiated by CFO Rick). But it makes sense that there was "overlap" because Mr. Young's consistent point is that, in effect, Mr. Belgarde and his company CFO Rick collusively worked together to the detriment of Millwright. That there is factual or legal overlap hardly means that Mr. Young was giving up on a right to arbitrate, particularly when he (or Millwright) asserted counterclaims and a cross-complaint only because they were potentially compulsory in nature. Finally, waiting to see if a case can be resolved informally before pursuing

the formality of litigation – whether in arbitration or otherwise – is hardly damning. *Compare Armstrong*, 59 F.4th at 1015 (noting that "'[s]eeking a *decision on the merits* of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum'") (emphasis added).

Accordingly, the Court rejects Mr. Belgarde's contention that Mr. Young has waived his right to arbitrate.

B. <u>Arbitrability of Claims</u>

Because there was no waiver by Mr. Young, the Court should next turn to the issue of whether the claims at issue are arbitrable. The claims at issue fall into two categories: (1) Mr. Young's *arbitration* claims and (2) Mr. Belgarde's *litigation* claims. Whether each set of claims is arbitrable is discussed below.

1. <u>Mr. Young's Arbitration Claims</u>

As indicated above, Mr. Young has asserted the following claims against Mr. Belgarde in arbitration:

- Breach of fiduciary duty.
- Breach of the Operating Agreement.
- Misappropriation of trade secrets.
- Fraud.
- Accounting.

All of the claims are brought individually and derivatively (*i.e.*, on behalf of Millwright), except for the last (which is brought only derivatively).

According to Mr. Young, all of his claims are properly in arbitration because they fall within the scope of the arbitration clause in the Millwright Operating Agreement. In response, Mr. Belgarde's only argument seems to be that the claims are not arbitrable because Mr. Young waived the right to arbitrate – a matter for the Court to decide. But as indicated above, the Court does not find the waiver argument persuasive.

/ / /

/ / /

Given the limited nature of Mr. Belgarde's opposition, there is no other reason for the Court to hold that Mr. Young's arbitration claims are not properly in arbitration. To be sure, Mr. Belgarde has included, in his FAC, allegations that: (1) Mr. Young failed to engage in face-to-face negotiations before seeking to arbitrate (as required by the arbitration clause) and (2) the claims brought on behalf of Millwright are defective because, under Delaware law, *see* note 5, *supra* (§ 12.14 providing for the application of Delaware law to arbitrable disputes), Mr. Young did not first make a demand for relief on Millwright's board or explain why demand would be futile. But, as argued by Mr. Young, those two matters (the first, a procedural issue and the second, a merits issue) are for the arbitrator to decide. The Operating Agreement's arbitration clause states that the AAA rules apply, and under the AAA Commercial Arbitration rules, the arbitrator is delegated matters of arbitrability. *See* AAA Commercial Arbitration Rule 7(a)[3] (providing that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court"); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (concluding that incorporation of AAA rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability, at least for sophisticated parties). The issues above go either to arbitrability – a matter delegated to the arbitrator – or to the merits – a substantive matter for the arbitrator.

2. Mr. Belgarde's Litigation Claims

a. Count 1

Count 1 in Mr. Belgarde's operative complaint is not really an independent litigation claim. In Count 1, Mr. Belgarde asserts that Mr. Young cannot arbitrate his claims because he did not first engage in face-to-face negotiations and because, for his derivative claims, he did not first make a demand on the Millwright board or explain why demand would be futile. Those issues have been addressed above. The matters are for the arbitrator to decide in the first instance.[4]

---

[3] Available at https://www.adr.org/media/ueonklrv/2026_commercial-arbitration-rules-mediation-procedures.pdf (last visited 10/23/2026).

[4] On the merits, Mr. Young asserts that he has pled demand futility. *See* Reply at 10 ("Belgarde

b. Count 2

Unlike Count 1, Count 2 is an independent litigation claim. In Count 2, Mr. Belgarde notes that the Millwright Operating Agreement has an indemnification clause and essentially asserts that Mr. Young – by using Millwright funds to pay for his arbitration – is *effectively* getting indemnified.[5] Mr. Belgarde maintains that Mr. Young should not be getting indemnified because the Operating Agreement precludes indemnification for bad faith conduct, and here Mr. Young's arbitration was not undertaken in good faith. Mr. Belgarde seeks a declaration that Mr. Young "may not fund his bad faith pursuit of the Arbitration using Millwright funds." FAC ¶ 93.

According to Mr. Belgarde, the issue of bad faith is – per the Operating Agreement – a matter for a court to decide, and not an arbitrator. The indemnification provision states:

> The Company will indemnify each officer and Manager (each a "Covered Person") to the fullest extent permitted by the Act, but such indemnity will not extend to any conduct by the party seeking indemnification that is determined by a court of competent jurisdiction to constitute bad faith, fraud, gross negligence, or willful misconduct. Any indemnity under this Section 8.2 will be paid from, and only to the extent of, Company assets and no Member will have any personal liability on account thereof.

FAC, Ex. A (Operating Agmt. § 8.2).

But Mr. Belgarde is not bringing a "true" indemnification claim – *i.e.*, he is not arguing that Mr. Young paid for the arbitration in the first instance and then sought repayment from Millwright under the indemnification clause in the Operating Agreement. Rather, Mr. Belgarde is contending that Mr. Young is *effectively* indemnifying himself by using Millwright funds to pay for the arbitration. If (as alleged) Mr. Young is using Millwright funds to pay for the arbitration, it is because Mr. Young is bringing derivative claims on behalf on Millwright. But whether Mr.

---

'was the only other Member and is adverse to the Company's interests'"). He also contends it was proper for him to initiate the arbitration because "Section 7.5(f) [of the Millwright Operating Agreement] vests the Manager, Young with authority to 'arbitrate . . . claims or demands of or against the Company.'" Reply at 10.

[5] Mr. Belgarde is *not* suggesting that Mr. Young first paid for the arbitration himself and then later got indemnified by Millwright. Rather, Mr. Belgarde is contending that Mr. Young used Millwright funds in the first instance to pay for the arbitration – presumably, because he was bringing (at least in part) claims derivatively on behalf of Millwright.

Young can properly bring derivative claims on behalf of Millwright is – as discussed above – an issue for the arbitrator to decide (*e.g.*, did Mr. Young make a demand on the Millwright board or would demand have been futile). In short, the issue falls within the scope of the arbitration clause. It is a dispute arising under the terms of the arbitration agreement.

Because the Court concludes that Count 2 should also be arbitrated, it does not address Mr. Young's merits arguments – *e.g.*, that (1) Count 2 is a derivative claim and Mr. Belgarde has not alleged a demand on the Millwright board or futility of demand, and (2) Count 2 is not ripe in that whether or not the arbitration was undertaken in bad faith cannot be determined until after the arbitration is completed.

c. Count 3

Finally, in Count 3, Mr. Belgarde alleges that he made multiple loans to Mr. Young but that Mr. Young has failed to pay any of the money back. Here, the basic question is whether Count 3 falls within the scope of the arbitration clause, which provides that disputes arising out of the Millwright Operating Agreement shall be arbitrated. *See* FAC, Ex. A (Operating Agmt. § 12.14).

Mr. Belgarde argues that the loan agreements are "freestanding contracts between two individuals" and that "[t]hey neither arise out of nor relate to the [Operating] Agreement." Opp'n at 16. Mr. Belgarde makes a fair point that, on the face of the FAC – as pled – there is nothing to indicate that the loan agreements are connected to the Operating Agreement. Furthermore, Mr. Young has the burden of proving that the claim falls within the scope of the arbitration clause. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) ("A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue.").

That being said, Mr. Young correctly points out that "[w]hether a dispute between the Members [of Millwright] over loans made during their co-ownership of the Company 'aris[es] under the terms of' the Operating Agreement is a scope question, *and scope questions are delegated to the [arbitration] panel*." Mot. at 16 (emphasis added); *see also* AAA Commercial

Arbitration Rule 7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."). At the hearing, the Court noted that, if there were no basis for Mr. Young's assertion that the loans were connected to the Millwright Operating Agreement, then it could not fairly say that there was a scope issue for the arbitrator to decide. *Cf. United Steelworkers v. Warrior Gulf Navig. Co.*, 363 U.S. 574, 582-83 (1960) ("[A]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). But Mr. Young did articulate a reasonable basis for his contention that the loans and the Operating Agreement are related: specifically, Mr. Belgarde himself pled in his answer to the arbitration demand that any recovery by Mr. Young should be offset by the amounts he owes Mr. Belgarde under the loans at issue. To be clear, the Court is not ruling here that Mr. Belgarde's claim for breach of contract necessarily falls within the scope of the arbitration agreement. Rather, it is simply holding that there is enough of a basis for the matter of scope to be determined by the arbitrator who has been delegated matters of arbitrability.

C. <u>Offset</u>

For the foregoing reasons, Mr. Young's arbitration claims are properly in arbitration, and all of Mr. Belgarde's litigation claims should also be arbitrated (at the very least, so that the arbitrator can determine arbitrability, as delegated).

The Court now addresses one final argument made by Mr. Belgarde. Mr. Belgarde asserts:

> [I]f the Court concludes that the Arbitration may proceed, Belgarde respectfully requests that any order compelling arbitration be entered without prejudice to his one-satisfaction defense, and that it expressly reserve that any amount recovered by Young or Millwright on account of the conduct alleged in the Amended Demand shall be credited against any award entered against Belgarde arising from the same injury.

Opp'n at 15. The Court rejects this request for relief. Any argument of avoiding double damages or offsetting should be made to the arbitrator.



United States District Court
Northern District of California

United States District Court
Northern District of California

## III. CONCLUSION

For the foregoing reasons, the Court grants Mr. Young's motion to compel arbitration. It also stays the case pending the arbitration. *See* 9 U.S.C. § 3 (providing for a stay "until such arbitration has been had in accordance with the terms of the agreement").

This order disposes of Docket Nos. 27 and 28.

**IT IS SO ORDERED**.

Dated: October 23, 2026

EDWARD M. CHEN
United States District Judge